Theodore E. STEBBINS, Jr.

v.

Melinda Blauvelt WELLS et al.

No. 99–335–Appeal.

Supreme Court of Rhode Island.

Feb. 7, 2001.

Justin T. Shay, Charles S. Beal, Providence, for Plaintiff.

William R. Grimm, Timothy P. Gallogly, Brent Canning, Adam C. Robitaille, James S. D'Ambra, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this real estate transaction case, the plaintiff, Theodore E. Stebbins, Jr. (the plaintiff), appeals from a Superior Court grant of summary judgment in favor of the defendants, Melinda Blauvelt Wells (Ms. Wells), Miriam Scott, individually, and Miriam Scott Limited, n/k/a Miriam Scott Productions (Ms. Scott), Deborah L. Kubik (Ms. Kubik), and Country and Coastal Properties, Ltd. (Coastal Properties) (collectively, the defendants). The case came before a single justice of this Court, who directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that cause has not been shown, and we proceed to resolve the appeal at this time.

### Facts/Procedural History

In the late 1980s, after vacationing in Little Compton, Rhode Island, for many summers, the plaintiff and his wife [1] developed an interest in purchasing a summer/retirement home in that area. To assist with their search for a suitable property, the plaintiff and his wife engaged Ms. Scott as their "buyer's broker," and discussed their property preferences and requirements with her. During the course of their search they viewed an oceanfront property. Subsequently, the plaintiff informed Ms. Scott that they were not interested in purchasing oceanfront property "because of the potential effect that erosion might have on their investment."

In 1994, Ms. Scott informed the plaintiff of the availability of a brackish waterfront property on Indian Hill Road. The property was situated on the Sakonnet River, not far from its confluence with the Atlantic Ocean. The property belonged to Ms. Wells, who had purchased it from Ms. Scott in 1984.[2] Ms. Scott previously had owned it for ten years.

---

1. The plaintiff's wife is not a party to this action.

2. Ms. Kubik and Coastal Properties, the other defendants in this matter, were the sales agents for Ms. Wells.

In June 1994, the plaintiff and Ms. Wells executed a purchase and sale agreement. The plaintiff viewed the property, and three independent professional inspections were made before the closing. During the entire period, the issue of erosion never was raised by any of the parties and was not addressed by any of the inspectors in their reports.

Shortly after obtaining possession, the plaintiff learned that the property was predisposed to water erosion and that, apparently, it had eroded by at least ten feet in the previous ten years. A handyman who formerly had been employed by Ms. Wells told the plaintiff that Ms. Wells had instructed him to remove foliage and trees from the property. He informed the plaintiff that since then, the rate of erosion had increased. He also told the plaintiff that he told Ms. Wells about the erosion, but that she did nothing in response. The plaintiff confronted Ms. Scott about the erosion, and she admitted that she was aware of its increased rate since the foliage and trees had been removed. The plaintiff subsequently filed the instant action.

The plaintiff alleges that the defendants violated G.L.1956 chapter 20.8 of title 5, entitled Real Estate Sales Disclosures (the disclosure statute), by failing to disclose a known deficient condition or defect; namely, the erosion. In addition, the plaintiff alleges fraud, negligent omission, negligence, breach of contract, breach of implied duty of good faith and fair dealing, and breach of warranty against Ms. Wells, racketeering and breach of fiduciary duty against Ms. Scott, and deceptive trade practices against all the realtors. Thereafter, the defendants moved for summary judgment.

At the close of the summary judgment hearing, the trial justice granted the motion on the racketeering count for lack of evidence. In a written decision, she found that the plaintiff had a duty to fully inspect the property and determined that it was unreasonable for him not to investigate the issue of erosion during negotiations for the purchase of a waterfront property. She noted that in the absence of fraud, an "AS IS" disclaimer provision in the purchase and sale agreement limited the seller's liability and should have triggered a warning bell for the plaintiff to inquire about erosion.[3] The trial justice then found that because the issue of erosion never had been raised, there was no misrepresentation or inducement on the part of the defendants. This appeal followed the denial of the plaintiff's motion for reconsideration.

In his appeal, the plaintiff maintains that the trial justice committed several errors of law. He contends that a general disclaimer may not relieve the defendants of liability for fraud. He next asserts that erosion is a deficient condition for purposes of the disclosure statute and that the defendants were required to disclose its existence. He then maintains that Ms. Scott, his broker and a former owner of the property, breached her fiduciary duty to inform him of the erosion. Finally, the plaintiff posits that the trial justice resolved material issues of fact about: (a) the reasonableness of his conduct; (b) whether he inquired about erosion; (c) whether the defendants were aware of the erosion; and (d) whether the problem was discoverable by visual inspection.

Additional facts will be supplied as needed.

### Analysis

We review summary judgment on a de novo basis by applying the same legal cri-

---

**3.** That provision in its entirety provides:

"Buyer acknowledges that Buyer has inspected the premises and all improvements thereon and in purchasing the same has not relied upon any warranties, representations or statements of the Seller or Broker as to its condition, Buyer agreeing to accept the premises 'AS IS' and without expectation as to their suitability for any particular purpose whether or not expressed in this Agreement."

teria as the motion justice. *See Kiley v. Patterson,* 760 A.2d 1253, 1255 (R.I.2000). "Summary judgment is appropriate if upon 'examination of all the pleadings, affidavits, admissions, answers to interrogatories, and other materials viewed in the light most favorable to the party opposing the motion reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Cain v. Johnson,* 755 A.2d 156, 164 (R.I. 2000) (quoting *Sullivan v. Town of Coventry,* 707 A.2d 257, 259 (R.I.1998)). As part of this review, "the motion justice should draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." *Hendrick v. Hendrick,* 755 A.2d 784, 789 (R.I.2000) (quoting *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,* 711 A.2d 628, 631 (R.I. 1998)).

### 1. Fraud and Misrepresentation

The plaintiff asserts that the defendants were aware of, but failed to disclose, a severe water erosion problem that affected the property, and maintains that the "AS IS" clause in the purchase and sale agreement is unenforceable as against public policy because it is based on misrepresentation.[4] To support this assertion, the plaintiff contends that on a previous occasion he specifically told Ms. Scott, his buyer's broker, that that he was not interested in investing in oceanfront property because of the deleterious effect that erosion might have on its value. He avers that the defendant's failure to disclose the erosion problem had a direct impact on his decision to purchase the property.

In negotiating for the purchase of property,

"[a] buyer has the option to inspect the property and inquire into possible defects prior to purchase. A seller who does not answer truthfully is liable in an action for misrepresentation. A buyer concerned with the truthfulness of the seller's answer or of possible future liability resulting from a prior owner's actions can seek a reduction in the sale price, seek indemnity from the seller (through a warranty), or walk away from the sale. A buyer, then, under an affirmative duty to inspect the land and make reasonable inquiry, can negotiate a selling price that reflects the land's actual, economic value." *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 955–56 (R.I.1994).

"[A] party who has been induced by fraud to enter into a contract" may elect either to rescind the contract, or "to affirm the contract and sue for damages in an action for intentional deceit or misrepresentation." *Travers v. Spidell,* 682 A.2d 471, 472 (R.I.1996) (per curiam). To establish fraud "the plaintiff must prove that the defendant 'made a false representation intending thereby to induce plaintiff to rely thereon' and that the plaintiff justifiably relied thereon * * *." *Id.* at 472–73 (quoting *Cliftex Clothing Co. v. DiSanto,* 88 R.I. 338, 344, 148 A.2d 273, 275 (1959)). Although "the liability of the seller can * * * be limited by the terms expressed in the agreement between the parties," *Hydro–Manufacturing, Inc.,* 640 A.2d at 956, a general merger and disclaimer provision in a purchase and sale agreement does not, as a matter of law, shield a defendant from an action for fraud. *See Travers,* 682 A.2d at 473; *accord LaFazia v. Howe,* 575 A.2d 182, 185 (R.I.1990).

In the present case, the trial justice found that the plaintiff never raised the issue of erosion with respect to this property and that the defendants never made any misrepresentations about its rate of erosion. After a review of the record, we determine that whether or not the plaintiff

---

4. "A misrepresentation is 'any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.'" *Travers v. Spidell,* 682 A.2d 471, 473 n. 1 (R.I.1996) (per curiam) (quoting *Halpert v. Rosenthal,* 107 R.I. 406, 413, 267 A.2d 730, 734 (1970)).

expressed concerns about erosion with the defendants, there is no evidence that they made any misrepresentations to him on the issue. Consequently, the trial justice did not err in granting summary judgment in favor of the defendants on the issue of fraud and misrepresentation.

## 2. The Disclosure Statute

The plaintiff asserts that G.L.1956 chapter 20.8 of title 5, the disclosure statute, requires truthful, good-faith disclosure. He contends that the property's severe erosion problem constituted a deficient condition within the meaning of the statute, and that the defendants were aware of, but failed to disclose, this defect in direct contravention of the statute. The plaintiff appears also to suggest that the existence of this alleged defect absolved him of the duty to inspect and inquire about erosion.

The issue here is whether natural water erosion constitutes a "deficient condition" within the meaning of the disclosure statute. A deficient condition is defined in § 5–20.8–1(5) as "any land restrictions, defect, malfunction, breakage, or unsound condition existing on, in, across or under the real estate of which the seller has knowledge," and real estate is defined in § 5–20.8–1(6) as "vacant land or real property and improvements consisting of a house or building containing one to four (4) dwelling units."

■ Although "[t]he doctrine of Caveat Emptor is still very much applied to sales of real estate," *Eramo v. Condoco*, 655 A.2d 697, 697 (R.I.1995) (mem.), "exceptions to the caveat emptor doctrine have developed based on equitable principles." *Boston Investment Property # 1 State v. E.W. Burman, Inc.*, 658 A.2d 515, 517 (R.I.1995). One of those exceptions involves "passive concealment by the seller of defective realty." *Wiederhold v. Smith*, 203 Ga.App. 877, 418 S.E.2d 141, 143 (1992). Such exception " 'places upon the seller or agent a duty to disclose in situations where he or she has special knowl-

edge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect its decision.' " *Hoffman v. Fletcher*, 244 Ga.App. 506, 535 S.E.2d 849, 851 (2000).

■ The present case involves the purchase of waterfront property located on brackish water near the confluence of the Sakonnet River and the Atlantic Ocean, and only about two miles from the ocean itself. The fact that the property was located on water put the plaintiff on notice of the possibility of erosion and he had a duty to inspect and inquire about its extent. *See Deckert v. Foster*, 230 Ga.App. 164, 495 S.E.2d 656, 657 (1998) (noting that a prospective buyer should have known that, in the absence of a proper drainage control system, runoff would occur on the steep grade of slope); *Beri, Inc. v. Salishan Properties, Inc.*, 282 Or. 569, 580 P.2d 173, 177 (1978) (stating that "purchasers of oceanfront building lots should be expected in some measure to inquire about the land's susceptibility to erosion").

■ Because erosion occurs naturally on all waterfront properties, its mere existence cannot be considered a defect for purposes of the disclosure statute. However, the plaintiff asserts that the specific erosion here was far more severe than ordinary erosion and that, as such, it rose to the level of being a defect for purposes of the disclosure statute. To support this assertion, he observes that the property had eroded at least ten feet in the previous ten years and that much of this extreme erosion is directly attributable to Ms. Wells's order to remove the trees and foliage. He also notes that there is evidence that both Ms. Wells and Ms. Scott were aware of this severe erosion but, nevertheless, failed to disclose its existence.

In viewing the evidence in the light most favorable to the plaintiff, we cannot disagree with his contentions. Although there is no evidence of any deliberate con-

374

cealment by the defendants, since it is unknown whether the extent of the erosion was so severe as to constitute a disclosable defect or unsound condition for purposes of the disclosure statute, there does exist a genuine issue of material fact regarding whether the severity of the erosion amounts to a disclosable defect that should have precluded the grant of summary judgment.

For the foregoing reasons, we sustain the plaintiff's appeal, vacate the Superior Court's order granting summary judgment in favor of the defendants on the disclosure issue, and remand this case for trial to determine whether the erosion was so severe that it constituted a disclosable defect under the statute.